HERITAGE HEALTHCARE
SERVICES, INC.

v.

A. Michael MARQUES, Director of
the Rhode Island Department of
Business Regulation, et al.

No. 2008–160–M.P.

Supreme Court of Rhode Island.

Jan. 6, 2011.

Jason B. Adkins, pro hac vice, for Plaintiff.

Elizabeth Kelleher Dwyer (Department of Business Regulation), Melissa E. Darigan (Beacon Mutual Insurance Company), Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

"If only simplicity were not the most difficult of all things."[1] Before this Court is a case with a complex and circuitous procedural travel; however, the narrow issue that this Court must determine is whether the phrase "lowest possible price" (LPP) in a statutorily crafted insurance charter gives rise to an individual cause of action. For the reasons set forth in this opinion, we hold that it does not, and we affirm the judgment of the Superior Court.

### Facts and Travel

The serpentine journey of this matter began in 2002, when the petitioner, Heritage Healthcare Services, Inc. (Heritage), brought a Superior Court civil action against Beacon Mutual Insurance Company, Inc. (Beacon).[2] Essentially, plaintiffs in the 2002 civil action allege that Beacon diverted over $100,000,000 in surplus reserves to a small percentage of its policyholders through artificially low insurance rates, instead of distributing surplus funds equally among its policyholders as dividends.

As the result of a series of amendments to the complaint, the continuing 2002 action eventually contained contractual and tort claims against Beacon for its alleged failure to provide workers' compensation insurance at the "lowest possible price." This claim rests on the language of P.L. 2003, ch. 410 (repealing G.L.1956 § 27–7.2–2), that Heritage argues can be interpreted only as an express mandate to Beacon through its statutory charter. It was Heritage's position in that action, as it is now, that Beacon's failure to provide coverage at the LPP gives rise to a private cause of action. The relevant disputed statutory language is as follows:

"SECTION 3. **Creation of fund.**— (a) The purpose of the fund is to ensure that all employers in the state of Rhode Island have the opportunity to obtain workers' compensation insurance at the *lowest possible price.* It is also the policy and purpose of this act to establish and maintain that the fund shall be the workers' compensation insurance carrier of last resort. The fund is created as a nonprofit independent public corporation for the purpose of insuring employers against liability for personal injuries for which their employees may be entitled to benefits under [G.L.1956] chapter 33 of title 28 or under 33 U.S.C. Section 901 et seq., and other employer's liabilities incidental to those provisions.

" * * *

"(f) The general assembly declares that a stable market for workers' compensation insurance for all employers

---

1. Carl Jung (1875–1961).

2. A ninth amended complaint to the still pending 2002 action includes additional plaintiffs. Collectively, plaintiffs now seek class status in this action against Beacon and several other since-named defendants.

seeking coverage is necessary to the economic welfare of Rhode Island; that a stable and competitive insurance market will benefit all employers, all employees and their families, and all insurance companies doing business in Rhode Island; that without this insurance at a competitive rate, the orderly growth and economic development of the state would be severely impeded; and that the provision of competitive insurance coverage by *the fund* for employers in Rhode Island and the capitalization of the fund through capital assessments as provided in this act *is for the benefit of the public and in furtherance of a public purpose.* P.L.2003, ch. 410. (Emphases added.)

Beacon moved to dismiss count 3 of Heritage's fifth amended complaint (count 3).[3] In so doing, Beacon argued that the court lacked subject-matter jurisdiction, and that such a claim should be brought before the Department of Business Regulation (DBR), the agency with clear statutory authority over Beacon's rate setting.

In a written decision dated August 29, 2005, the trial justice granted Beacon's motion to dismiss count 3 "because Heritage's claims belong before the DBR." In his ruling, the trial justice reasoned that count 3 implicated a controversy when "it is quite clear that the legislature intended that disputes * * * be resolved in an administrative forum." The court said that "[b]ecause a state agency is not yet involved in the case before the Court, the proper analytic framework is the doctrine of primary jurisdiction." Quoting from *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the trial justice explained, that "[p]rimary jurisdiction applies" where:

> "a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."

Further, the trial justice said that under such circumstances, "[j]udicial review is withheld until the administrative process has run its course in order to promote the proper relationship between the courts and administrative agencies charged with particular regulatory duties," and therefore, "[d]ismissal is appropriate where the plaintiff has failed to exhaust its administrative remedies." With this explanation providing a jurisdictional backdrop, the Superior Court directed:

> "Resolution of the meaning of the term in controversy lies in the first instance with the DBR because it is the agency charged with the enforcement of the provision. Once the DBR has applied its superior expertise to the question, its decision will be entitled to due deference by this Court."

After the trial justice dismissed that count of the complaint, Heritage followed the court's directive that it seek relief from DBR. At that time, DBR already was reviewing two petitions for declaratory relief filed by Heritage that concerned Beacon.[4]

---

**3.** Count 3 of the fifth amended complaint to the 2002 civil action claimed that Beacon breached its contract with Heritage by "failing to provide a policy of workers' compensation insurance at the lowest possible price."

**4.** Those two issues addressed: (1) whether G.L.1956 § 27–9–51 prohibiting "excess profits" applied to Beacon, and (2) whether Beacon was statutorily authorized to form Castle Hill Insurance Company as a for-profit subsidiary. Those two issues are not before us.

As a result, the question of the meaning of LPP was added to the pending petitions.

On July 25, 2006, the DBR released its decision on all three issues.[5] In its response to the issue presently before us, the DBR held:

> "The question, therefore, is whether the inclusion of the words 'lowest possible price' alters this system to allow a private cause of action on behalf of an individual employer who claims it has been charged more than the 'lowest possible price.' The Department does not believe that this was the legislature's intent. Rather, inclusion of this language was a grant of jurisdiction to the Department * * *."

After describing (1) its rate-setting and review process, (2) the economic crisis that obliged the General Assembly to statutorily fashion Beacon, (3) the administrative remedy expressly provided by the legislature within the legislation, and (4) the severe marketplace instability that would arise if the DBR were to adopt Heritage's interpretation of LPP, the DBR concluded, "[p]etitioner's request for a statement that the phrase 'lowest possible price' allows for a private cause of action is Denied."[6] The DBR decision also ruled against Heritage

with respect to the two issues arising from the original consumer complaint that Heritage filed.

Under G.L.1956 § 42–35–15 of the Administrative Procedures Act (APA), Heritage appealed all three rulings contained in the DBR decision to the Superior Court, and on August 9, 2007, the Superior Court issued a decision, which concluded:

> "After due consideration of the arguments advanced by counsel in their memoranda, the Court will (1) affirm the DBR's decision which denied the request for a statement that the phrase 'lowest possible price' allows for a private cause of action; (2) affirm DBR's decision with respect to the formation of the Castle Hill Insurance Company; and (3) remand this case for further proceedings as to whether Beacon violated G.L. 1956 § 27–9–51 relating to excess profits."

In affirming the agency's decision about the LPP language, the Superior Court noted that "Heritage's brief does not clearly state the relief that it requested from the DBR, and that it now seeks from this Court. However, DBR viewed the issue before it as a request by Heritage 'for a

---

**5.** The DBR decision styled the third issue before it as "[w]hat is the meaning of the language in Beacon's enabling legislation that its purpose is to provide workers' compensation insurance at the 'lowest possible price.' "

**6.** In reaching its decision, the DBR explained: "Heritage makes general arguments concerning expenditure by Beacon and then argues that the existence of these expenditures means that a particular insured did not receive a rate at the 'lowest possible price.' * * * Hastily derived conclusions based on uninformed analysis of individual expenditures is the antithesis to appropriate regulation. Petitioner's analysis refers to individual investments of Beacon and certain administrative expenses. The Department is charged with evaluating insurance companies as a whole and assuring that

they remain solvent in order to pay claims. Under Heritage's argument, any policyholder, could present the Court with a series of expenditures and argue that the Court should order damages to a particular employer. This could easily lead to the insolvency of the carrier to the detriment of all policyholders. The legislature could not have intended such a result and the Department will not imply it from these words. * * * It is clear in Beacon's enabling legislation that the survival of Beacon is paramount to the viability of the workers' compensation insurance market in the State of Rhode Island. It is nonsensical to pervert the interpretation of Beacon's enabling legislation to require them to operate on the edge of solvency."

statement that the phrase 'lowest possible price' allows for a private cause of action' against Beacon." In affirming the DBR decision, the court also said, "[t]he Court disagrees slightly with the DBR's reasoning, but ultimately agrees with its decision to deny Heritage's request."

Heritage immediately advanced a motion to reconsider the adverse rulings concerning LPP and the Castle Hill Insurance Company, and on May 22, 2008, the Superior Court issued an order and judgment that affirmed the 2007 decision. Of particular interest to us, the order on May 22, 2008, said, "[t]he Court affirms the Decision of the Department of Business Regulations (DBR) which deemed that RI Public Law 2003, Chapter 410, Section 3 termed 'lowest possible price' does not create a private cause of action."

Heritage next sought review of the issue of lowest possible price by filing a petition for certiorari, which we granted. Before this Court, Heritage claims error in:

"1. The DBR ruling that the 'lowest possible price' constitutes a grant of primary jurisdiction over both prices and rates for workers' compensation insurance. * * *

"2. The Superior Court ruling that the 'lowest possible price' statutory term is not an enforceable term of Beacon's corporate charter. * * *

"3. The Superior Court ruling that DBR has primary jurisdiction over the prices for workers' compensation insurance by virtue of having primary jurisdiction over the rates for workers' compensation insurance."

7. General Laws 1956 § 42–35–16 provides in pertinent part that:

"Any party in interest, if aggrieved by a final judgment of the superior, family, or district court rendered in proceedings brought under § 42–35–15, may, within twenty (20) days from the date of entry of the judgment, petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law involved."

## Standard of Review

■ Our review under the APA, § 42–35–16, is *de novo*. *See Johnston Ambulatory Surgical Associates, Ltd. v. Nolan*, 755 A.2d 799, 805 (R.I.2000).[7] "Although this Court affords the factual findings of an administrative agency great deference, questions of law—including statutory interpretation—are reviewed *de novo*." *Iselin v. Retirement Board of the Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I.2008). Review is limited to questions of law involved. *Rossi v. Employees' Retirement System*, 895 A.2d 106, 110 (R.I.2006).

■ When we undertake such a review, "our 'ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" *Labor Ready Northeast, Inc. v. McConaghy*, 849 A.2d 340, 344 (R.I. 2004) (quoting *Stebbins v. Wells*, 818 A.2d 711, 715 (R.I.2003)). "We ascertain the Legislature's intention behind an ambiguous statute by considering 'the entire statute, keeping in mind its nature, object, language and arrangement.'" *Arnold v. Rhode Island Department of Labor and Training Board of Review*, 822 A.2d 164, 168 (R.I.2003) (quoting *LaPlante v. Honda North America, Inc.*, 697 A.2d 625, 628 (R.I.1997)). However, as in this case, in the absence of ambiguity, "[t]his Court must literally interpret a clear and unambiguous statute and attribute the plain and ordinary meanings to its words." *Arnold*, 822 A.2d at 168.

## Analysis

We have examined the record and judgment of the Superior Court, and we agree

with the trial justice's conclusion that no private cause of action is provided by the phrase "lowest possible price."

Beacon Mutual Insurance Company, a nonprofit public corporation chartered as a domestic mutual insurance company, was created by the Rhode Island General Assembly in 1990 in response to a crisis in the workers' compensation insurance market.[8] Beacon's charter has been amended from time to time, with recent amendments occurring in 2003 with the enactment of P.L.2003, ch. 410.[9] It is the meaning of "lowest possible price," a term located within Section 3 of the most recent amendment, that is the nub of the dispute.

## A

### The Jurisdictional Questions

■ As a threshold matter, we find that alleged errors raised by Heritage that relate to the primary jurisdiction of the Department of Business Regulation as pertains to P.L.2003, ch. 410, § 3 are not properly before us. Review of the record in this anfractuous case leads us to conclude that this jurisdictional issue emanates from a holding in the still pending Superior Court action. In that case, the trial justice determined that the meaning of the term "lowest possible price" lay more properly within the jurisdiction of the DBR. Heritage did not seek review of that ruling, but instead followed the trial justice's direction to seek relief at the DBR. Thus, the only question properly before us on review is whether the Superior Court appropriately held that the DBR

was correct in determining that the term "lowest possible price" did not give rise to a private cause of action.

## B

### The Meaning of Lowest Possible Price

■ In its appeal to the Superior Court from the DBR decision, Heritage argued that the agency issued a decision "that, *inter alia*, is legally erroneous, arbitrary and capricious, and unsupportable by substantial evidence; in violation of statutory provisions; and in excess of statutory authority of the DBR." However, although the trial justice affirmed the DBR ruling as to the import of the LPP phrase within the enabling statute, the court distinguished its reasoning from that of the agency, explaining:

"The Court disagrees slightly with the DBR's reasoning, but ultimately agrees with its decision to deny Heritage's request. The 'lowest possible price' language does not confer any sort of regulatory jurisdiction upon DBR. DBR does have regulatory authority over Beacon's rates; however, that authority simply derives from another portion of Beacon's enabling statute." [10]

In its ruling, the Superior Court held that "[t]he 'lowest possible price' language is merely a statement of policy or purpose, which is common in many statutes, but which does not itself create substantive rights." Responding to Heritage's contention that such an interpretation would render the disputed language superfluous,

---

8. *See* P.L.1990, ch. 332, Art. II.

9. Public Laws 2003, ch. 410, §§ 23 and 24 repealed G.L.1956 chapter 7.2 of title 27 while expressly recognizing and intending that "there shall be full continuity between chapter 27-7.2 of the general laws and passage of this act." P.L.2003, ch. 410, § 23.

10. The Superior Court found that Beacon's regulatory jurisdiction over Beacon's rates was independently authorized under P.L. 2003, ch. 410, §§ 4, 7, 12 (defining Beacon's organizational structure); 5, 6, 10, 13 (enumerating its powers); and 11 (subjecting Beacon to regulatory oversight).

thereby violating general statutory construction principles, the Superior Court disagreed, noting that "such provisions do serve important functions even if they do not create substantive rights. Statements of policy or purpose inform administrators and courts of the purposes of legislation, since they usually have not participated in drafting such legislation."

After our *de novo* review, we are satisfied that the Superior Court justice correctly affirmed the decision of the DBR.[11] We do not perceive the language of P.L. 2003, ch. 410, § 3 to be ambiguous. In our opinion, Heritage endeavors to generate an ambiguity in the statute by selectively excising "lowest possible price" from the context of its nesting within its particular sentence, subsection, and section.[12] Indeed, adopting the interpretation suggested by Heritage would lead us down a dangerous path in violation of established principles of construction. *See In re Brown*, 903 A.2d 147, 149 (R.I.2006) ("It is an equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation."); *Hargreaves v. Jack*, 750 A.2d 430, 435 (R.I. 2000) ("It is a well-known maxim of statutory interpretation that this Court 'will not construe a statute to reach an absurd [or unintended] result.'") (quoting *Kaya v. Partington*, 681 A.2d 256, 261 (R.I.1996)).[13] We agree with the reasoning of the trial justice who wrote in his 2007 decision:

"[W]hen read in the context of the entire statute creating Beacon, the role of the policy or purpose statement is clear. *See, e.g., Rhode Island Bd. of Governors for Higher Educ. v. Newman*, 688 A.2d 1300, 1302 (R.I.1997) (finding that a Court must endeavor to ascertain the legislative intent, 'examin[ing] the statute in its entirety and then the individual provisions in the context of the whole, not as if each provision were independent of the whole')."

In our view, it is clear that the phrase "lowest possible price" in of the statute is prefatory in nature and does not create any substantive private right. Recently, the Supreme Court of Hawai'i said:

"The general rule of statutory construction is that policy declarations in statutes, while useful in gleaning the purpose of the statute, are not, of themselves, a substantive part of the law which can limit or expand upon the express terms of the operative statuto-

11. We have held that "the function of prescribing remedies for rights is a legislative responsibility not a judicial task * * *." *Cummings v. Shorey*, 761 A.2d 680, 685 (R.I. 2000) (citing *Bandoni v. State*, 715 A.2d 580, 594 (R.I.1998)).

12. We are of the opinion that the justice presiding over the continuing 2002 civil action was on the mark in a 2004 decision when he wrote:

"In essence, [Heritage] is attempting to employ reasoning similar to that of negligence per se, where a violation of a statute unilaterally establishes negligence. If this Court were to accept that argument, the Administrative Procedures Act would be utterly undermined in that potential plaintiffs could circumvent the administrative adjudicative system simply by claiming a breach of a fiduciary duty for a violation of law subject to the APA."

13. Our Court in *Kaya v. Partington*, 681 A.2d 256, 267–68 (R.I.1996), articulated the concern underlying this statutory construction principle, saying, "[t]he reason to be on guard is that when legislative silence is confronted, the temptation is omnipresent for judges to label any interpretation of that silence that embodies policies with which they disagree as 'absurd' or 'creat[ing] a result not intended by the Legislature,' thereby freeing the court to intrude its own preferred policies into the law under the euphemistic banner of 'filling in a legislative gap', or 'interstitial' lawmaking." This Court is mindful that vigilance against such temptation similarly must be omnipresent.

ry provisions." *Poe v. Hawai'i Labor Relations Board,* 97 Hawai'i 528, 40 P.3d 930, 942 (2002).

*See also Illinois Independent Telephone Association v. Illinois Commerce Commission,* 183 Ill.App.3d 220, 132 Ill.Dec. 154, 539 N.E.2d 717, 726 (1988) ("A declaration of policy contained in a statute is, like a preamble, not a part of the substantive portions of the act. Such provisions are available for clarification of ambiguous substantive portions of the act, but may not be used to create ambiguity in other substantive provisions."); *Price Development Co., L.P. v. Orem City,* 995 P.2d 1237, 1246 (Utah 2000) (holding that policy sections may be used to clarify ambiguities, but they do not create substantive rights that are not found within the statute).

We do not agree with Heritage's argument that the disputed language would be rendered superfluous if it is not construed to create a private cause of action.[14] In our opinion, the phrase "lowest possible price" is clear within its context as a statement of policy. Policy language such as this serves to clarify other substantive provisions of Beacon's enabling act without creating substantive rights.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record is remanded to the Superior Court.

---

14. *See, e.g., Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987) (stating that legislative enactments may not "be construed, if at all possible, to render sentences, clauses, or words surplusage").