[1] On or about March 13, 2009, this Court granted former Mayor David Cicilline, in his capacity as the Mayor of the City of Providence, and the City of Providence's Motion to Intervene. On or about May 5, 2011, Mayor Angel Taveras, in his capacity as Mayor of the City of Providence, was substituted as an Intervenor.
 DECISION
Before the Court is a Miscellaneous Petition brought by the Retirement Board of the Employees' Retirement System of the City of Providence (Retirement Board) pursuant to the City of Providence's Code of Ordinances § 17-189.1, as enacted by Ord. 1999, ch. 99-45, § 1 (Honorable Service Ordinance or HSO).[2], [3]
In accordance with the Honorable Service Ordinance, the Retirement Board now seeks a judicial confirmation of its determination that a reduction of Frank E. Corrente's (Mr. Corrente) municipal pension benefits was warranted. *Page 2 See Code of Ordinances § 17-189.1(a)(5), as enacted by Ord. 1999, ch. 99-45, § 1 (requiring the Retirement Board to "initiate a civil action in the [S]uperior [C]ourt for the revocation or reduction of [a] retirement allowance or . . . benefit. . . ." where the Retirement Board has determined that revocation or reduction of the municipal employee's pension benefits was warranted).
 I Facts and Travel
On June 26, 1967, Mr. Corrente commenced his employment with the City of Providence (City) as a Financial Specialist in the Controller's Office. See Hr'g Ex. 8 ¶ 1. On May 11, 1981, following a series of promotions, Mr. Corrente became City Controller, a position he held until his first retirement on April 12, 1987. See Miscellaneous Pet. ¶ 3.
Upon his retirement, Mr. Corrente received medical coverage and a monthly pension of $1,852.61 based on a gross salary of $42,098.45 and twenty-five years of service. See Hr'g Ex. 8 ¶ 4; see also Intervenors' Ex. 1, Report Recommendation of Hr'g Officer at 1. Mr. Corrente continued to receive his pension benefits until he began his second term of employment with the City roughly forty-four months later, receiving approximately $81,500 during this time period. Seeid.
On December 31, 1990, Mr. Corrente became the Director of Administration for former Mayor Vincent A. Cianci. See Hr'g Ex. 8 ¶ 5. Mr. Corrente served as the Director of Administration until his second retirement on July 4, 1999. Id. ¶ 6. Subsequently, Mr. Corrente received a monthly pension benefit of $5,881.30, based on a gross salary of $91,656.58 and approximately thirty-three years of service. Id. ¶ 7; see also
Intervenors' Ex. 1, Report Recommendation of Hr'g Officer at 2. *Page 3 
On April 2, 2001, following a federal investigation known as "Operation Plunder Dome," the United States Attorney filed a Superseding Indictment against Mr. Corrente and five others.See Hr'g Ex. 1, Superseding Indictment; see also
Intervenors' Ex. 1, Report Recommendation of Hr'g Officer at 1. On June 24, 2002, a jury in the United States District Court for the District of Rhode Island found Mr. Corrente guilty on seven of the counts charged in the indictment. See Hr'g Ex. 8 ¶ 8. An Amended Judgment was entered against Mr. Corrente on: (1) Count I, conspiracy to violate the Racketeer Influenced and Corrupt Organizations statute (RICO); (2) Count II, a substantive RICO violation; (3) Count V, conspiracy to commit federal bribery; (4) Count XIX, conspiracy to commit extortion; and (5) Counts XVII and XVIII, attempted extortion. See Hr'g Ex. 3, Am. Judgment. Mr. Corrente was sentenced to (1) a total of fifty-six months of imprisonment, with a credit for time served; (2) a $75,000 fine; (3) a $600 assessment; and (4) two years of supervised release for each count, to be served concurrently.[4] Id.
Following his indictment and conviction, the Retirement Board suspended — effective as of October 2002 — Mr. Corrente's pension benefits, pending a hearing to determine whether the benefits should be revoked or reduced pursuant to the Honorable Service Ordinance.[5] Id. ¶ 11. *Page 4 
In that connection, on April 23, 2003, the Retirement Board appointed Larry J. Ritchie (Professor Ritchie), a Professor of Law at Roger Williams University School of Law, to serve as an independent hearing officer. Id. ¶ 15. As the hearing officer, Professor Ritchie was responsible for conducting hearings regarding the revocation or reduction of Mr. Corrente's pension benefits and preparing a recommendation for the Retirement Board. Id.
Upon Mr. Corrente's release from federal prison, Professor Ritchie contacted him to schedule a hearing in accordance with § 17-189.1(a)(5). Id. ¶ 22; see also Intervenors' Ex. 1, Report Recommendation of Hr'g Officer at 2. Following the December 27, 2007 hearing, Professor Ritchie submitted a written report and recommendation (Report Recommendation) to the Retirement Board as well as a transcript of the hearing and two sets of exhibits. See Intervenors' Ex. 1, Report Recommendation of Hr'g Officer. In his Report Recommendation, Professor Ritchie advised the Retirement Board to:
 "(1) Revoke all retirement benefits attributable to Mr. Corrente's second term of employment by the City of Providence as Director of Administration,
 "(2) Pay a reduced retirement pension to Mr. Corrente based on his first term of service to the City when he worked in the Controller's office,
 "(3) Return any contributions that Mr. Corrente paid into the retirement system during his years as Director of Administration, without interest, and
 "(4) Offset any retirement benefits and interest due on benefits that were suspended in October of 2002 with the excessive payments made to Mr. Corrente during the three years and three months following his retirement as Director of Administration, including interest on those payments. A lump sum payment, if any is due, could then be made for payments from the time of suspension of *Page 5 
payments until the resumption of payments at the reduced amount."[6] See id. at 17.
On August 13, 2008, following a series of hearings, the Retirement Board voted to accept and adopt Professor Ritchie's Report Recommendation in full. See Intervenors' Ex. 2, Aug. 13, 2008 Ret. Bd. Hr'g Tr. at 15. In accordance with § 17-189.1(a)(5), the Retirement Board subsequently initiated the instant action by filing a Miscellaneous Petition seeking confirmation of its decision to accept and adopt Professor Ritchie's Report Recommendation.
 II Discussion
This Court has previously considered and addressed the level of deference, if any, to be afforded to the Retirement Board's determination(s) that revocation or reduction of a municipal employee's pension benefits — pursuant to the HSO — is warranted.See Retirement Bd. of the Emps. Ret. Sys. of the City ofProvidence v. Ryan, Nos. 02-5196, 08-5442, 07-2175, 08-6508, 08-7268,2009 R.I. Super. LEXIS 122, at *47-58 (R.I. Super. Sept. 8, 2009). Given the Honorable Service Ordinance's failure to articulate the appropriate standard of review to be applied by the Superior Court when adjudicating the Retirement Board's determination, this Court equated the Retirement Board's two-tiered review process with that of an APA agency such as the Employees' Retirement Board of Rhode Island. Id. at *49. Recognizing the "striking similarity" of the two processes, as well as the comprehensiveness of the review process routinely undertaken by the Retirement Board, the Court concluded that "utilizing a *Page 6 
standard of review similar to that found in § 42-35-15 of the APA [is] most appropriate" in this context.[7] Id. at *49. In so holding, the Court reasoned:
 "By according the recommendations provided by the [Retirement Board] deference[,] and analyzing the review procedures undertaken by the Board through the scrutinizing lens of a standard of review comparable to that articulated in § 42-35-15 of the APA[,] the employees' rights can be adequately protected, while at the same time providing the review process undertaken by the Board with some degree of significance." Id. at *53-54.
As a result, the Court instructed that
 "when dealing with issues of fact . . . to the extent the facts are supported by substantial evidence and the Board has not acted in an arbitrary or capricious manner, violated any statutory or constitutional provisions, exceeded its powers, or engaged in any unlawful procedure(s), deference shall be given to the Board's recommendation(s)."[8] Id. at *57. *Page 7 
It is against this backdrop that the Intervenors now urge the Court to deny the Retirement Board's Petition and Motion to Confirm.[9] In particular, they argue that the Retirement Board's decision to reduce Mr. Corrente's pension benefits was arbitrary and capricious, based upon an abuse of discretion, clearly erroneous, and affected by other error of law.
However, having adopted the standard of review set forth in § 42-35-15(g), the Court must now afford the Retirement Board's determination the appropriate deference.[10] See EnvironmentalScientific Corp. v. Durfee, 621 A.2d 200, 207-08 (R.I. 1993);see also Ryan, 2009 R.I. Super. LEXIS 122, at *54 n. 43. Accordingly, it is well settled that when reviewing a contested administrative decision, this Court will generally not substitute its judgment for that of the agency on questions of fact. SeeJohnston Ambulatory Surgical Assoc., Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000); Champlin's RealtyAssoc. v. Tikoian, 989 A.2d 427, 437 (R.I. 2010) (explaining that an administrative agency's factual findings are entitled to great deference); but see Heritage Healthcare Servs.,Inc. v. Marques, 14 A.3d 932, 936 (R.I. 2011) (quotingIselin v. Retirement Bd. of the Emps.' Ret. Sys. of R.I.,943 A.2d 1045, 1049 (R.I. 2008)) *Page 8 
(affirming that an administrative agency's determinations as to questions of law are not binding on the Court and are reviewedde novo). Rather, the Court's review is limited to an examination of the record before the agency to determine if there is any legally competent evidence therein to support the agency's decision.[11] Johnston Ambulatory, 755 A.2d at 805 (quotingBarrington Sch. Comm. v. Rhode Island State Labor RelationsBd., 608 A.2d 1126, 1138 (R.I. 1992)); Rocha v. Rhode IslandPub. Utils. Comm'n, 694 A.2d 722, 726 (R.I. 1997) (instructing that the standard of review is so deferential that a court should not reverse an agency's decision merely because it would have reached a different result). "In essence, if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'" Auto Body Ass'n of R.I. v. Rhode IslandDep't of Bus. Regulation, 996 A.2d 91, 95 (R.I. 2010) (quotingRhode Island Pub. Telecomms. Auth. v. Rhode Island State LaborRelations Bd., 650 A.2d 479, 485 (R.I. 1994));Baker v. Dept. of Emp't Training Bd. of Review,637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v. CoastalRes. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)) (stating that a court should "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record").
In the instant matter, Professor Ritchie's Report Recommendation was both rational and appropriate in light of the evidence presented, and correspondingly, the Retirement Board's determination was unequivocally supported by competent evidence. Indeed, Professor Ritchie advised the Retirement Board that *Page 9 
 "[t]he specific acts of which [Mr. Corrente] was convicted, the power of his position, and the public trust placed in his office are sufficient reasons to deny any retirement benefits for, at a minimum, Mr. Corrente's entire second term of service . . . as the Director of Administration. Even if . . . his criminal acts did not span his entire term as Director of Administration, his breach of the employment contract was substantial enough to disallow any retirement benefits for the entire second term of service to the City." See Intervenors' Ex. 1, Report Recommendation of Hr'g Officer at 6.
Notwithstanding the nature of Mr. Corrente's crimes, Professor Ritchie further recommended that "Mr. Corrente's case [was] a clear example of the underlying rationale for the HSO and [the Rhode Island Public Employee Pension Revocation and Reduction Act, G.L. 1956 § 35-10.1-1, et seq.] — the allowance of a reduction of retirement benefits rather than a complete revocation."[12] Id. at 6.
Central to Professor Ritchie's determination was the fact that "[Mr. Corrente's] 20-year, first term of employment in the City Controller's office [] ceased nearly four years before he began working as Director of Administration. Id. For that reason, he proposed that
 "[t]he break between the two terms of City employment, the drawing of retirement benefits before taking on the second term, and the confinement of any alleged dishonorable service to the second term of employment with the City suggests a division that should be recognized under the ordinance." Id.
In that connection, the record reflects that prior to accepting and adopting Professor Ritchie's recommendation, the Retirement Board considered and deliberated over the materials supporting his conclusion, its prior determinations, and the plain language of the HSO. See, e.g., *Page 10 
Intervenors' Ex. 2, Aug. 13, 2008 Ret. Bd. Hr'g Tr. at 10-15, 20. In the end, the members of the Retirement Board had before them the basis for Professor Ritchie's recommendation, and while they were free to reject it, they voted and agreed that a reduction of Mr. Corrente's pension was warranted based on the circumstances before them. See id. at 22.
The Intervenors now argue that the Retirement Board's action was arbitrary and capricious in light of its prior determinations to revoke, or effectively revoke, the pensions of several other former City employees. The Intervenors, however, miss the mark.
Despite their assertions, the Retirement Board is not strictly bound by its prior determinations, but rather, is limited only by the confines of its own regulations. See Arnold v. Lebel,941 A.2d 813, 821 n. 2 (R.I. 2007). In that regard, the cases cited by the Intervenors stand in contrast with the matter at hand. This is not an instance in which an agency has expressly deviated from its regulations or a prior interpretation of those regulations.See, e.g., Bardales v. INS,27 F.3d 1, 5 (1st Cir. 1994). Here, the Retirement Board unquestionably had the authority to revoke or reduce Mr. Corrente's pension benefits based on the facts and circumstances before it. To hold otherwise would simply reduce the Retirement Board's procedures to a rubberstamp of revocation and render them inconsequential. See Code of Ordinances § 17-189.1(a)(4) (authorizing the revocation or reduction of an employee's pension benefits "if such employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment").
Furthermore, although a presumption exists that an agency will adhere to its settled rules or explain its decision to depart from its prior norms, the Retirement Board's prior actions did not constitute a settled rule or strictly binding precedent.See, e.g., Town of Burrillville v. Pascoag ApartmentAssocs., LLC, 950 A.2d 435, 451 (R.I. 2008) (citingAtchison, Topeka Santa Fe Ry. Co. v. Wichita Bd. of Trade,412 U.S. 800, 808, 93 S. Ct. 2367, 2375 (1973) *Page 11 
(holding that the State Housing Appeals Board acted arbitrarily and capriciously where it failed to apply or comport with its previously announced definition for "substantial completeness"). Assuming,arguendo, that the Retirement Board was required to conform to its prior revocations, the Court finds that Professor Ritchie's Report Recommendation, and the Retirement Board's adoption thereof, adequately justify the departure. See Town ofBurrillville, 950 A.2d at 451. Indeed, while the Retirement Board was concerned with the consistency of its determinations, it nevertheless approved, in its entirety, Professor Ritchie's findings as to the division of Mr. Corrente's terms of employment and thereby accepted his recommendations as to the pension.
Mr. Corrente has urged the Court to consider his "Additional Requests." Specifically, Mr. Corrente has requested: (1) a lump-sum payment, if any is due, with interest from the date of his October 2002 suspension, until the resumption of payments at the reduced amounts; (2) a credit or deduction for any and all taxes paid by him from the total amounts owed to the City; and (3) that all pension benefits previously paid to him from the date of his second retirement to the date of his suspension not be returned to the City. See Mr. Corrente's Answer to Pet'r's Miscellaneous Pet. ¶ 15.
The Court, however, finds that Professor Ritchie's Report Recommendation, and the Retirement Board's adoption thereof, specifically contemplated and appropriately dealt with the first and last prongs of Mr. Corrente's "Additional Relief."See Intervenors' Ex. 1, Report Recommendation of Hr'g Officer at 10-17. In light of the deference afforded to the Retirement Board and Professor Ritchie's factual findings, the Court will not alter the recommendations or relief adopted. *Page 12 
With respect to a credit or reduction in the amounts paid for taxes, the record reflects that Professor Ritchie acknowledged that a fifth item should be added to his recommendations to address this issue. See Mr. Corrente's Ex. 3, July 30, 2008 Ret. Bd. Hr'g Tr. at 15. In particular, Professor Ritchie advised the Retirement Board that a clause should be added to his recommendations providing for the return of excessive payments made to Mr. Corrente following his second retirement "less[] eighteen hundred a month at thirty-nine months and less the taxes that he paid on the two hundred thirtythousand." See id. (emphasis added). Notwithstanding the verbal recommendation, however, the Retirement Board never voted to accept or incorporate an adjustment for taxes, and in view of that, the Court is of the opinion that the matter should be returned to the Retirement Board for a proper determination as to the tax credit recommended by Professor Ritchie.
Consequently, although the Court, Mr. Corrente, or the Intervenors may have reached a different conclusion from that of Professor Ritchie or the Retirement Board, that fact is of no consequence or effect to the outcome of this matter, and is simply an insufficient basis upon which to reject the Miscellaneous Petition or Motion to Confirm presently before the Court. See Bunch v. Board ofReview, R.I. Dept. of Emp't Training,690 A.2d 335, 337 (R.I. 1997). The Court finds that Professor Ritchie's recommendation and the determination of the Retirement Board were rationally and reasonably supported by the facts and evidence before them, and for that reason, and in light of the great deference afforded, the Court grants the relief sought. *Page 13 
 III Conclusion
After due consideration of all the evidence, together with the arguments advanced by counsel at the hearing and in their memoranda, the Court finds that the Retirement Board's determination to accept and adopt Professor Ritchie's recommendations, thereby reducing Mr. Corrente's pension benefits, was supported by substantial evidence and was not arbitrary and capricious, in violation of any statutory or constitutional provisions, in excess of its powers, or the result of unlawful procedure. Accordingly, the Court will afford deference to the Retirement Board's determination and grant its Motion to Confirm. The Court, however, will defer judgment on Mr. Corrente's request for a tax credit and remand the matter to the Retirement Board for a proper determination.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[2] As enacted in 1999, the Honorable Service Ordinance provided for the revocation or reduction of a City employee's "retirement allowance or annuity or other benefit or payment of any kind to which an employee [was] otherwise entitled to under chapter 17" where the "employee [was] convicted of or plead[] guilty ornolo contendere to any crime related to his or her public employment." See Code of Ordinances § 17-189.1(a)(4), as enacted by Ord. 1999, ch. 99-45, § 1.
[3] For historical purposes only, the Court notes that on or about March 21, 2011, the Honorable Service Ordinance was amended by the Providence City Council. See Code of Ordinances § 17-189.1, as amended by Ord. 2011, ch. 11-12, § 1 (Amended HSO). Although it specifically addresses the balancing test to be utilized by the Retirement Board when determining whether to revoke or reduce a pension and articulates the standard of review to be applied by the Superior Court on appeal, the Amended HSO relates only to "applications for pension benefits made on or after January 1, 2011," and for that reason, is inapplicable to the instant matter. Seeid.
[4] On August 10, 2004, the United States Court of Appeals for the First Circuit affirmed Mr. Corrente's judgment of convictions.See generally, United States v. Cianci,378 F.3d 71 (1st Cir. 2004). Mr. Corrente began serving his sentence on October 11, 2002 and was discharged on November 2, 2006.See Hr'g Ex. 8 ¶¶ 10, 20.
[5] The Retirement Board cannot unilaterally revoke or reduce a municipal employee's pension benefits. The HSO provides in pertinent part:
 "Whenever any employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment, the retirement board shall conduct a meeting, with the employee having the opportunity to be heard, to determine if a recommendation of revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted." See Code of Ordinances § 17-189.1(a)(5), as enacted by Ord. 1999, ch. 99-45, § 1 (emphasis added).
[6] Prior to the suspension, Mr. Corrente received approximately $230,000 in pension benefits over the course of thirty-nine months.See Intervenors' Ex. 1, Report Recommendation of Hr'g Officer at 2.
[7] Section 42-35-15(g) provides:
 "The Court shall not substitute its judgment for that of the agency as to the weight of evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon lawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
[8] On appeal, our Supreme Court declined to address the propriety of this Court's holding as to the level of deference to be afforded to the Retirement Board's determinations on factual matters.See Ryan v. City of Providence,11 A.3d 68, 76 (R.I. 2011).
[9] Notably, the Intervenors have styled their motion as one for summary judgment. The Court, however, having equated the instant matter with an administrative appeal, will treat the party's papers as submitted in connection with G.L. 1956 § 42-35-15(f). Additionally, the Intervenors have moved for leave to expand the record to include the decisions of the Retirement Board and the reports and recommendations of its hearing officers in all proceedings under the HSO, including those for Anthony Annarino (Mr. Annarino), Rosemary Glancy (Ms. Glancy), Kathleen Parsons (Ms. Parsons), and Urbano Prignano (Mr. Prignano). In light of this Court's discretionary authority to expand the record and take judicial notice, the Court will grant the Intervenors' motion only as to the submitted materials relating to Mr. Annarino, Ms. Glancy, Ms. Parsons, and Mr. Prignano.See § 42-35-15(d); R.I.R. Evid. 201.
[10] Similar to the APA's two-tiered review process, here, Professor Ritchie, "sitting as if at the mouth of the funnel," analyzed the evidence, testimony, relevant law, and opinions and issued the Report Recommendation. Ryan,2009 R.I. Super. LEXIS 122, at *49-50. The Retirement Board, as the second level of review, reviewed the materials submitted by Professor Ritchie and determined whether to adopt or reject his recommendation with respect to the reduction of Mr. Corrente's municipal pension. Id. Because the Retirement Board sits at the "discharge end of the funnel," however, it did not receive the information considered by Professor Ritchie first hand.Id. As a result, the Court is mindful that the "further away from the mouth of the funnel an administrative official is . . . the more deference should be owed to the fact finder." SeeDurfee, 621 A.2d at 207-08.
[11] Legally competent evidence "is relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Town of Burrillville v. Rhode Island State LaborRelations Bd., 921 A.2d 113, 118 (R.I. 2007).
[12] In so advising, Professor Ritchie relied upon our Supreme Court's prior pronouncement that "the possibility of a reduction or revocation of a former public employee/official's pension does not serve to exact retribution, but . . . is the ineluctable consequence of his or her failure to satisfy an inherent condition of his or her public employment." See Retirement Bd. of Emps.' Ret. Sys. ofState City of Cranston v. Azar, 721 A.2d 872, 878 (R.I. 1998) (citing Matter of Almeida,611 A.2d 1375, 1383 (R.I. 1992)).

 *Page 1