**Supreme Court**

No. 2013-102-Appeal.
(PB 02-7016)

Heritage Healthcare Services, Inc., et al.    :

v.                          :

The Beacon Mutual Insurance Co., et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Heritage Healthcare Services, Inc., et al.    :

               v.               :

The Beacon Mutual Insurance Co., et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.** We are called upon to determine whether a dismissal pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure in favor of the state-chartered workers' compensation insurance provider, The Beacon Mutual Insurance Company (Beacon), and against the plaintiffs, a certified class of approximately 14,000 Beacon policyholders, was properly granted.[1] In the proceedings below, a justice of the Superior Court found that the plaintiffs' claims were derivative in nature and, as a consequence, were subject to

---

[1] The named plaintiffs include Heritage Healthcare Services, Inc. (Heritage), Vito's Express, Inc., Swimming Pool Specialist, Inc., J. Broomfield and Sons, Inc., Sterling Investigative Services, Inc., and Leonelli and Vicario, Ltd. In addition to the named plaintiffs, suit was filed on behalf of the following class of plaintiffs, "[a]ll Beacon policyholders who held a Beacon Workers Compensation & Employers Liability Policy ('the Policy') during the period from September 26, 2001 to March 22, 2006 and did not receive a consent-to-rate discount during that time." On January 19, 2011, the Superior Court certified the class and appointed the named plaintiffs, excluding Heritage, to serve as the class representatives. See Heritage Healthcare Services, Inc. v. The Beacon Mutual Insurance Co., No. PB-02-7016, 2011 WL 202299 at *10 (R.I. Super. Ct. Jan. 19, 2011).

the procedural requirements set forth in G.L. 1956 § 7-1.2-711(c)[2] and Rule 23.1 of the Superior Court Rules of Civil Procedure.[3] There was no dispute with the hearing justice's finding that the plaintiffs had failed to file suit in accordance with § 7-1.2-711(c) and Rule 23.1. As a result, he dismissed the complaint and entered judgment on behalf of Beacon. On appeal, the plaintiffs insist that their claims met the requirements of a direct, and not a derivative, action. Accordingly, the plaintiffs argue that the Superior Court erred in dismissing their complaint. In contrast, Beacon argues that dismissal of the complaint was proper because the plaintiffs' claims are classically derivative in nature and thus subject to the procedural prerequisites of such cases, prerequisites that were not satisfied before suit was commenced. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

Beacon was created as a legislative response to a growing workers' compensation insurance crisis in the state.[4] P.L. 2003, ch. 410, § 3(f). The General Assembly's stated purpose for enacting the legislation that created Beacon was "to ensure that all employers in the state of Rhode Island have the opportunity to obtain workers' compensation insurance at the lowest

---

[2] General Laws 1956 § 7-1.2-711(c)(1) provides in pertinent part that a corporate shareholder may not initiate suit against the corporation until "[a] written demand ha[s] been made upon the corporation to take suitable action."

[3] Rule 23.1 of the Superior Court Rules of Civil Procedure provides in pertinent part that "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority * * * and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

[4] Public Laws 2003, ch. 410, §§ 23 and 24 repealed G.L. 1956 chapter 7.2 of title 27 while expressly recognizing and intending that "there shall be full continuity between chapter 27-7.2 of the general laws and passage of this act." P.L. 2003, ch. 410, § 23.

possible price."[5]  Id. at § 3(a).  Accordingly, Beacon was established to act as the "workers' compensation insurance carrier of last resort."  Id.

Beacon's charter provides that the company is to be "operated as a domestic mutual insurance company."[6]  P.L. 2003, ch. 410, § 3(b).  The charter further specifies that the "management and control of [Beacon] is vested solely in the board."  Id. at § 5.  As such, Beacon's board has been granted the authority to exercise certain enumerated powers.  Id. at § 10.  Specifically, Beacon has the discretion to "[d]eclare dividends to its policyholders when there is an excess of assets over liabilities, and minimum surplus requirements" have been attained.  Id. at § 10(6).  Further, Beacon's charter says that Beacon "may" declare dividends, evidencing that this power is discretionary.  Id.  In addition, Beacon and "any workers' compensation insurance policyholder may mutually consent to modify the rates for that policyholder's workers' compensation insurance policy, provided [Beacon] files notice of the modification with the director of the department of business regulation."  Id. at § 11(d)(2).  Finally, Beacon's charter provides in part that "[a]ll premiums and other money paid to [Beacon] * * * are the sole property of [Beacon] and shall be used exclusively for the operation and obligations of [Beacon]."  Id. at § 14.  With Beacon's statutory framework as a background, we turn our attention to the allegations set forth in plaintiffs' complaint.

In December 2002, Heritage Healthcare Services, Inc. (Heritage) initiated litigation against Beacon, seeking to recover under the theories of breach of contract and breach of fiduciary duties.  Since that time, this case has traveled what this Court has previously described

---

[5] We have previously determined that the statutory phrase "lowest possible price" does not create a private cause of action.  Heritage Healthcare Services, Inc. v. Marques, 14 A.3d 932, 938 (R.I. 2011).

[6] A mutual insurance company "issues no capital stock and is cooperatively owned by its policyholders, who are both the insurers and the insureds."  3 Steven Plitt et al., Couch on Insurance 3d § 39:15 at 39-26 (2011).

as a "serpentine journey." Heritage Healthcare Services, Inc. v. Marques, 14 A.3d 932, 933 (R.I. 2011). During the somewhat Methuselah-like life of this case, numerous motions to amend have been granted that have altered the nature of plaintiffs' complaint as well as the composition of the parties thereto.[7]

The plaintiffs allege that, from September 2001 to March 2006, Beacon "engaged in a systematic scheme to divert over $101 million to a small percent of its policyholders rather than distributing it equitably to all its policyholders." The plaintiffs contend that to advance this scheme, Beacon ceased formally declaring and distributing annual dividends from 2002 until 2004. The plaintiffs further contend that Beacon "charg[ed] inequitable and unauthorized lower premiums," referred to as consent-to-rate discounts, to certain of its largest policyholders, instead of filing lower rates for all its policyholders. The plaintiffs maintained that the consent-to-rate discounts were "unauthorized and illegal" because Beacon lacked the authority to consent to a lower rate for certain of its policyholders to the exclusion of the other policyholders. As a result, plaintiffs in essence conclude that because of the consent-to-rate discounts, they were denied money that should have been equitably distributed to all policyholders as dividends.

In addition, plaintiffs allege that Beacon breached its fiduciary and implied duties of good faith and fair dealing because the company was "systematically operated in a corrupt, improper and unlawful manner." Similarly, plaintiffs allege that Beacon "breached its duty to treat all its policyholders fairly and equally by distributing significant profits (in the form of lower net premiums) to [its largest p]olicyholders at the expense of all its other policyholders." Moreover,

---

[7] In September 2008, a justice of the Superior Court granted plaintiffs' motion to file a ninth amended class action complaint. It is well established that the filing of an amended complaint supersedes the original complaint and becomes the operative pleading for purposes of Rule 12 of the Superior Court Rules of Civil Procedure. See Hall v. Insurance Co. of North America, 666 A.2d 805, 806 (R.I. 1995). Accordingly, we shall confine our review to plaintiffs' ninth amended class action complaint.

- 4 -

plaintiffs contend that Beacon engaged in "favoritism and bias in pricing" as well as "inappropriate and lavish spending." Finally, plaintiffs allege that "Beacon was not operated soundly and with customary prudence, appropriate checks and balances, accountability or transparency." As a result, plaintiffs filed suit seeking "an accounting, restitution and/or damages, and an injunction prohibiting [Beacon] from engaging in [similar conduct] in the future."

On February 17, 2012, Beacon filed a motion for judgment on the pleadings, arguing that plaintiffs' claims were derivative and therefore subject to the procedural prerequisites contained in § 7-1.2-711(c) and Rule 23.1.[8] The plaintiffs objected to Beacon's motion. After hearing argument on the motion and objection thereto, on June 11, 2012, the Superior Court issued a written decision, wherein it applied the test articulated in <u>Tooley v. Donaldson, Lufkin, & Jenrette, Inc.</u>, 845 A.2d 1031, 1039 (Del. 2004), and determined that plaintiffs' claims were derivative, not direct, in nature. The Superior Court reached this conclusion after making two findings: (1) it was Beacon that primarily suffered the harms alleged by plaintiffs; and (2) Beacon would receive the benefit of any recovery in this matter. Because the hearing justice determined that plaintiffs' claims were derivative in nature, he concluded that they were governed by § 7-1.2-711(c) and Rule 23.1. The hearing justice then found that plaintiffs had failed to satisfy the procedural prerequisites set forth in the statute and the rule, and he dismissed the complaint. On December 17, 2012, after the hearing justice denied plaintiffs' motion to

---

[8] Rule 12(c) of the Superior Court Rules of Civil Procedure provides:

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

reconsider, judgment entered, granting Beacon's motion for judgment on the pleadings and dismissing plaintiffs' complaint in its entirety. The plaintiffs filed a timely notice of appeal to this Court.

## II

## Standard of Review

"A Rule 12(c) motion for judgment on the pleadings provides a trial court with the means of disposing of a case early in the litigation process when the material facts are not in dispute after the pleadings have been closed and only questions of law remain to be decided." Haley v. Town of Lincoln, 611 A.2d 845, 847 (R.I. 1992) (citing 5A Wright & Miller, Federal Practice and Procedure, Civil 2d § 1367 at 509-10 (1990)). "A Rule 12(c) motion is tantamount to a Rule 12(b)(6) motion, and the same test is applicable to both, that is, is it clearly apparent that the plaintiff can prove no set of facts to support the complaint." Collins v. Fairways Condominiums Association, 592 A.2d 147, 148 (R.I. 1991). The standard to be applied to a Rule 12(c) motion is "restrictive," particularly when "the questions of law applicable to the controversy are fact intensive." Haley, 611 A.2d at 847, 848. The court must accept that "[t]he factual allegations contained in the nonmovant's pleadings are admitted as true for purposes of the motion," and "[a]ll proper inferences * * * are to be drawn in favor of the nonmovant." Id. at 847. Thus, to prevail on a Rule 12(c) judgment on the pleadings, the defendant must "demonstrate to a certainty that the plaintiff will not be entitled to relief under any set of facts that might be proved at trial." Haley, 611 A.2d at 847.

- 6 -

## III

## Discussion

On appeal, plaintiffs argue that the hearing justice erred when he held that their claims were derivative in nature and when he dismissed their complaint for not satisfying the procedural requirements associated with a derivative action. To the contrary, plaintiffs contend that their claims are direct, because governing law entitles them to an equitable distribution of the excess surplus of the company and because they suffered disproportionate harm as compared to other policyholders.[9] Further, plaintiffs argue that Beacon's failure to formally declare a dividend does not transform the nature of their claims from direct to derivative. Finally, plaintiffs insist that the hearing justice erred in holding that Beacon was authorized to distribute consent-to-rate discounts to its policyholders. In contrast, Beacon argues that the hearing justice properly ruled that plaintiff's claims were derivative and therefore subject to the statutory procedural

---

[9] In addition, plaintiffs argue that their claims are direct because Beacon's board abdicated its responsibilities; however, a review of the record reveals that plaintiffs failed to timely raise this argument during the lower-court proceedings. Pursuant to this Court's time-honored raise-or-waive rule, issues not properly presented before the trial court may not be raised for the first time on appeal. Federal National Mortgage Association v. Malinou, 101 A.3d 860, 865 (R.I. 2014) (citing Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 430 (R.I. 2013)). The plaintiffs raised their abdication argument for the first time in their motion to reconsider. This Court has previously stated that arguments raised for the first time in a motion to reconsider are not timely, and should not be considered, because it would permit "two bites at the apple." Flanagan v. Blair, 882 A.2d 569, 574 (R.I. 2005). However, and even in the face of plaintiffs' waiver, the cases cited in support of their abdication argument are readily distinguishable from the situation before the Court at this time. In Parnes v. Bally Entertainment Corp., 722 A.2d 1243, 1244 (Del. 1999), the court was presented with a corporate stockholder's challenge to the fairness of a corporate merger, a claim that is clearly distinguishable from this case. Further, in Grimes v. Donald, 673 A.2d 1207, 1213 (Del. 1996), the court relied primarily upon the plaintiff's desired remedy, a declaration that certain employment agreements were void, to find the claims were direct. Here, plaintiffs do not seek a declaration; rather, they seek "an accounting, restitution and/or damages, and an injunction prohibiting [Beacon] from engaging in [similar conduct] in the future."

prerequisites because it was Beacon that suffered the harm and because the remedy, therefore, belongs to Beacon alone, and not to any individual policyholder.

The parties agree that the test articulated by the Supreme Court of Delaware in Tooley, 845 A.2d at 1033, should be applied to this case to determine whether plaintiffs' claims are derivative or direct in nature.[10] The relevant inquiry, as enunciated in Tooley, is two-fold: "(1) who suffered the alleged harm ([Beacon] or the suing [policyholders], individually); and (2) who would receive the benefit of any recovery or other remedy ([Beacon] or the [policyholders], individually)?" Id. at 1033. If Beacon suffered the harm and would be entitled to receive the requested relief, the claim is derivative. See id. at 1039; see also Halliwell Associates, Inc. v. C.E. Maguire Services, Inc., 586 A.2d 530, 533 (R.I. 1991) (explaining that a claim seeking "to redress a wrong done to the corporation, or if the claim arises solely as a consequence of a corporate wrong," is derivative in nature). Conversely, the claim is direct if plaintiffs can demonstrate that they have suffered harm "independent of any alleged injury to [Beacon]" that would entitle them to an individualized recovery. Tooley, 845 A.2d at 1039. "Such a claim is distinct from an injury caused to [Beacon] alone * * * [because] the recovery or other relief flows directly to [plaintiffs], not to [Beacon]." Id. at 1036.

At the outset, plaintiffs argue that their claims should be determined to be direct for two reasons. First, plaintiffs argue that governing law entitles them to an equitable distribution of Beacon's excess surplus; therefore, they say, their claims are direct. However, plaintiffs' argument is at odds with their complaint. The gravamen of plaintiffs' complaint is that Beacon engaged in a scheme whereby it ceased formally declaring dividends in favor of all policyholders

---

[10] See Bove v. Community Hotel Corp. of Newport, Rhode Island, 105 R.I. 36, 42, 249 A.2d 89, 93 (1969) (explaining that Delaware case law is the leading authority in the field of corporate law).

so that it could give consent-to-rate discounts to its largest policyholders.  The plaintiffs contend that, through this artifice, Beacon was able to funnel $101 million in excess surplus to its largest policyholders rather than equitably distributing it to all policyholders via a dividend.  However, by distributing the $101 million in the form of consent-to-rate discounts, those assets were entirely diverted from Beacon.  Therefore, Beacon never collected the $101 million because it was distributed in the form of lower premiums charged to its largest policyholders; that money never became excess surplus that could have been distributed equitably.  Put simply, because the $101 million was never collected by Beacon, it never ripened into an excess surplus that could be subject to a distribution.

It is true that, in a mutual insurance company, "the premium exacted is necessarily greater than the expected cost of the insurance, as the redundancy in the premium furnishes the guaranty fund out of which extraordinary losses may be met * * * ."  Penn Mutual Life Insurance Co. v. Lederer, 252 U.S. 523, 525 (1920).  Generally, "[i]t is of the essence of mutual insurance that the excess in the premium over the actual cost as later ascertained shall be returned to the policyholder."  Id.  However, in this case, pursuant to Beacon's charter, the decision to return excess surplus was entirely discretionary.  P.L. 2003, ch. 410, § 10(6).  Therefore, until the board declares an excess surplus, Beacon was under no duty to issue dividends to all policyholders.  Id.

In other words, even if the $101 million had been collected, that would not have necessarily entitled plaintiffs to an equitable distribution of those funds because Beacon's charter is clear that the board has the discretion, but is not required, to "[d]eclare dividends to its policyholders when there is an excess of assets over liabilities, and minimum surplus requirements" are satisfied.  P.L. 2003, ch. 410, § 10(6).  Thus, we are not persuaded by plaintiffs' argument that they have a direct claim under governing law.  Even viewing the

allegations set forth in the complaint in the light most favorable to plaintiffs, it is our opinion that it was Beacon, not the plaintiffs individually, which suffered the harm when $101 million in prospective premiums were diverted as consent-to-rate discounts. See Tooley, 845 A.2d at 1033. As a result, it "logically follow[s]" that Beacon, not plaintiffs, would benefit by any recovery. Id. at 1036.

Second, plaintiffs argue that they suffered disproportionate harm as compared to other policyholders; therefore, their claims should be considered to be direct. To support this argument, plaintiffs rely upon Kramer v. Western Pacific Industries, Inc., 546 A.2d 348 (Del. 1988), and Gatz v. Ponsoldt, No. Civ.A. 174-N, 2004 WL 3029868 (Del. Ch. Nov. 5, 2004). However, we find these cases to be of no assistance to plaintiffs. In Kramer, 546 A.2d at 352, the plaintiffs challenged several corporate transactions that occurred shortly before a buyout merger. The plaintiffs argued that their claims were direct in nature because their respective portions of the proceeds from the merger had been reduced by the corporate transactions. Id. Nonetheless, the court found that the plaintiffs' claims were derivative, because the corporation, not the individual shareholders, had suffered the harm of decreased corporate value. Id. at 352-53.

Likewise, in Gatz, the plaintiffs filed what was styled as a direct action, challenging four separate corporate transactions. Gatz, 2004 WL 3029868 at *6. The court found that three of the claims were derivative, and the fourth, alleging that the board benefitted a specific class of stock over others, was indeed direct. Id. at *7-8. The court reasoned that the fourth claim was direct because the overall value of the corporation was unaffected by the transaction, while at the same time a certain class of shareholders had been harmed. Id. at *8. This is distinguishable from the

present case because Beacon was clearly harmed when it did not collect $101 million in premiums that had been absorbed as consent-to-rate discounts.

Next, plaintiffs argue that, notwithstanding the fact that Beacon never formally declared a dividend, their claims are direct because they seek to remedy an inequitable distribution of excess surplus. In support, plaintiffs rely upon Kimberly-Clark Corp. v. Factory Mutual Insurance Co., 566 F.3d 541, 547 (5th Cir. 2009), for the proposition that mutual insurance companies are required to distribute their excess surplus to policyholders. In our opinion, that case does not buttress plaintiffs' argument. The court in that case was clear that policyholders have an equitable right to a mutual insurance company's surplus only when the company announces a surplus. Id. at 548. The court held that "when a distribution is declared, the company becomes liable to pay the policyholders because they collectively own any announced distribution from the surplus." Id. at 549. Therefore, policyholders are entitled to an equitable distribution only when a declaration of surplus has been declared. Id.

Here, plaintiffs concede that Beacon never declared a dividend or distribution. Instead, plaintiffs alleged that Beacon, in a surreptitious maneuver, gave consent-to-rate discounts to select policyholders. However, because Beacon never declared a distribution or surplus, we conclude that plaintiffs had no entitlement to a distribution. Kimberly-Clark, 566 F.3d at 549.

Finally, plaintiffs insist that the hearing justice erred in holding that Beacon was authorized to distribute consent-to-rate discounts to its policyholders. Instead, plaintiffs contend that, consistent with a finding made by the Department of Business Regulation, Beacon's charter provides only for consent-to-rate increases. However, even assuming that plaintiffs are correct that, in the absence of authority to do so, Beacon provided consent-to-rate discounts, that does not transform their claims from derivative to direct. Indeed, it is our opinion that it would be

Beacon, not plaintiffs individually, that would suffer any harm occasioned by the inappropriate premium discounts because Beacon necessarily would have collected less money in premiums than it should have collected. Therefore, because Beacon suffered the harm, it is Beacon that would be entitled to any recovery. Accordingly, under the tenets set forth in Tooley, plaintiffs' claims are derivative in nature.

Because we have determined that the plaintiffs' claims are derivative in nature, it necessarily follows that they were required to comply with the procedural requirements set forth in § 7-1.2-711(c) and Rule 23.1 before they commenced this suit. Section 7-1.2-711(c)(1) provides, in pertinent part, that a corporate shareholder may not initiate suit against the corporation until "[a] written demand ha[s] been made upon the corporation to take suitable action." Further, Rule 23.1 requires that "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Failure to satisfy these prerequisites mandates the dismissal of a derivative action. See Giuliano v. Pastina, 793 A.2d 1035, 1037 (R.I. 2002); Hendrick v. Hendrick, 755 A.2d 784, 793-94 (R.I. 2000). Here, a review of the record reveals that the plaintiffs made no such demand on Beacon before they initiated this action. Additionally, the plaintiffs' complaint is silent as to what efforts they took to obtain their desired remedy before they filed suit. Based upon these facts, the Superior Court's dismissal for noncompliance with § 7-1.2-711(c) and Rule 23.1 was proper.

# IV

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, to which the papers in the case may be remanded.



| | |
|---|---|
| **TITLE OF CASE:** | Heritage Healthcare Services, Inc., et al. v. The Beacon Mutual Insurance Co., et al. |
| **CASE NO:** | No. 2013-102-Appeal.<br>(PB 02-7016) |
| **COURT:** | Supreme Court |
| **DATE OPINION FILED:** | February 6, 2015 |
| **JUSTICES:** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **WRITTEN BY:** | Associate Justice Francis X. Flaherty |
| **SOURCE OF APPEAL:** | Providence County Superior Court |

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Jason B. Adkins, Pro Hac Vice

For Defendants:  Jordan D. Hershman, Pro Hac Vice